Teresa A. **PYLES**, Plaintiff–Appellee,

v.

Robert S. **RAISOR**, Defendant–Appellant,

Ray L. **Sabbatine, et al.,** Defendants.

No. 94–5047.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1995.

Decided Aug. 1, 1995.

Charles G. Williamson, Jr., Mt. Sterling, KY (argued and briefed), for plaintiff-appellee.

Dave Whalin (argued and briefed), Landrum & Shouse, Louisville, KY, Gordon Goad, Dept. of Alcoholic Beverage Control, Frankfort, KY, for defendant-appellant.

Before: JONES and BATCHELDER, Circuit Judges; JOINER, District Judge.*

JOINER, D.J., delivered the opinion of the court, in which BATCHELDER, J., joined. JONES, J. (pp. 1216–17), delivered a separate dissenting opinion.

JOINER, District Judge.

■ Defendant, Robert Raisor, an enforcement officer for Kentucky's Department of Alcoholic Beverage Control, arrested plaintiff Teresa Pyles at a rock concert for supplying alcohol to a minor. Pyles responded with this 42 U.S.C. § 1983 action, claiming that the arrest and the manner in which it was conducted violated her civil rights. The district court agreed in part, concluding that Pyles' arrest violated Kentucky law. The court entered judgment as a matter of law in Pyles' favor on the issue of liability, and the jury awarded Pyles $35,000 in damages. Inasmuch as Raisor had probable cause to arrest Pyles, we find no federal constitutional right implicated in this action, and reverse the judgment against him.

## I.

■ The rock concert at which Pyles was arrested was held in Rupp Arena, where state, county and city law enforcement officers were engaged in a joint operation to control the unlawful procurement of alcohol for minors. Their operation was conducted pursuant to Ky.Rev.Stat. § 530.070(1)(a) (Baldwin 1994), which governs unlawful transactions with minors and provides that a person is guilty of a misdemeanor when he knowingly "sells, gives, purchases or procures any alcoholic or malt beverage in any form to or for a minor." Section 530.070(1)(a) further states that it "does not apply to a parent or guardian of the minor." Under Kentucky law, the age of majority is 18, except with respect to alcohol and the care and treatment of children with disabilities, for which the age of majority is 21. Ky.Rev.Stat. § 2.015 (Baldwin 1994). The officers were instructed to issue citations to adults who violated § 530.070(1)(a) with re-

spect to minors 18 years of age and older, but to arrest violators who procured alcohol for minors under the age of 18. To aid in the enforcement of § 530.070(1)(a), all beer was sold at the concert in distinctively colored cups.

Pyles attended the concert with her husband, an adult friend, and two German exchange students. Immediately upon arriving, Pyles' husband and his friend bought two glasses of beer apiece, the limit at the concession stand. They testified that each planned on drinking three beers, and returned to the line to purchase two more glasses of beer. The three adults then walked to their seats, each carrying two glasses of beer. The exchange students accompanied them.

Raisor observed the group walking down the aisle and took a seat behind them. Raisor testified that he saw one of the exchange students, Annabell Haars, take a sip from a beer-colored glass with a straw in it. Raisor approached the group, asked for identification, and was told that Haars had none with her. Raisor saw a glass of beer sitting on the floor between Pyles and Haars, and observed Haars trying to scoot the beer with her foot closer to Pyles' seat. Raisor told Pyles and Haars to accompany him to the concourse, where another officer ascertained that Haars was 17 years old. According to Raisor, Pyles became loud and argumentative, telling him that Haars was an exchange student living in her house, and would be deported if arrested. Pyles did not tell Raisor that she was Haars' guardian. Raisor testified that Haars said that she had taken a few sips of the beer, and that the legal age for drinking beer in Germany was 16.

Haars did not testify at trial. Pyles testified, however, that the beer on the floor was one of the three purchased for their adult friend, and that he had left it behind when he exchanged seats with Haars. Pyles further testified that she was detained at the arena for thirty minutes, and that during this time Raisor shouted at her and used profane lan-

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michi-

gan, sitting by designation.

guage. Pyles was then handcuffed and transported by a Lexington police officer to the detention center. Pyles testified that she endured a pat-down search at the detention center in the presence of male inmates, and that she was held three hours before she was permitted to leave.

The misdemeanor charge against Pyles ultimately was dismissed, but the reason for the dismissal is a matter of dispute. Pyles claims to have demonstrated that she was Haars' guardian, and that § 530.070(1)(a) did not apply to her. Raisor and another officer testified that the judge dismissed the charge because Haars was old enough to drink beer in her native country, and because the judge did not want to interfere with the exchange program.

Following the dismissal of the misdemeanor charge, Pyles filed suit in federal court pursuant to 42 U.S.C. § 1983 against Raisor, the Lexington–Fayette Urban County Government, the Lexington–Fayette County Detention Center, and employees and deputies of each. With respect to Raisor, Pyles alleged that her arrest was not supported by probable cause, and claimed without further elaboration that the arrest violated her federal constitutional "rights, privileges and immunities." Pyles' specific contentions became clearer at trial, where she also claimed that Raisor used excessive force during the arrest. The excessive force claim was rejected by the court on Raisor's motion for judgment as a matter of law made at the conclusion of Pyles' case, and Pyles has not cross-appealed this determination. As to the other defendants, Pyles challenged the manner in which she was searched and detained following her arrest, again claiming generally that the defendants violated her constitutional rights. The claims against all the other defendants were dismissed at the conclusion of Pyles' case due to her failure to demonstrate that the defendants' actions were taken pursuant to a municipal policy or custom. Pyles has not cross-appealed this determination.

Trial proceeded with respect to the one claim remaining in the case, Pyles' allegation that her arrest was unlawful. The parties filed cross-motions for judgment as a matter of law at the close of the evidence, and the court denied Raisor's motion and granted Pyles' motion with respect to Raisor's liability. The court stated that it "had no problem with" Raisor's testimony that he had probable cause to believe that Pyles had given Haars the beer, and also found that Raisor saw Haars take a drink from a beer-colored cup. Nonetheless, the court found the arrest defective under Kentucky law, which permits an officer to make certain warrantless misdemeanor arrests only when the misdemeanor is committed in his presence. *See* Ky.Rev. Stat. § 431.005(1)(d) (Baldwin 1994); *Mash v. Commonwealth,* 769 S.W.2d 42 (Ky.1989) (holding probable cause insufficient to support a warrantless misdemeanor arrest). The district court interpreted *Mash* to require that the arresting officer personally observe the arrestee commit each element of the offense. Because Raisor did not see Pyles hand one of the beers to Haars, the district court concluded that Raisor lacked the statutory authority to effect the arrest. The court further found that Pyles' mention of the fact that Haars was an exchange student living in her home obligated Raisor to determine whether § 530.070(1)(a) applied by inquiring about Pyles' possible status as Haars' guardian. Finally, the court questioned the logic of Raisor's instructions to arrest only those adults who procured alcohol for minors under the age of 18, noting that § 530.070(1)(a) does not draw a distinction in the ages of the minors to whom alcohol is provided. The court ultimately concluded that the arrest violated Kentucky law, and entered judgment as a matter of law against Raisor on the issue of liability.

## II.

Raisor raises numerous issues [1] on appeal, but we find it necessary to reach only

---

1. Among the issues raised is Raisor's entitlement to qualified immunity for the damage claim against him in his individual capacity. A defendant such as Raisor is qualifiedly immune from suit unless he violated constitutional rights which

were clearly established at the time of his actions. "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of

one. This action was brought pursuant to 42 U.S.C. § 1983, a statute which provides that one who, under color of state law, deprives another of the "rights, privileges, or immunities secured by the Constitution and laws," shall be liable for damages. "Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metropolitan Gov't of Nashville,* 34 F.3d 345, 347 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995). Accordingly, in *Conley v. Williams,* No. 93-5524, 1994 WL 326001, 1994 U.S. App. LEXIS 16911 (6th Cir. July 5, 1994), this court held that a § 1983 plaintiff's claim that he was unlawfully stopped and required to present his driver's license turned on federal constitutional law, and not on state law. "While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983." *Id.* at *6, 1994 WL 326001 at *2.

In *Barry v. Fowler,* 902 F.2d 770 (9th Cir.1990), the Ninth Circuit addressed the very issue presented here, whether a § 1983 plaintiff claiming wrongful arrest can prevail by demonstrating that the arresting officer violated a state law requirement that the misdemeanor be committed in the officer's presence. The court held that the state law requirement was not grounded in the Fourth Amendment to the federal Constitution, and that the vitality of the plaintiff's § 1983 action depended not on whether the misdemeanor was committed in the defendant officer's presence, but on whether the officer had probable cause under the Fourth Amendment to make the arrest. Because no reasonable jury could have concluded that the officer lacked probable cause for the arrest, the court affirmed the directed verdict against the plaintiff.

Plainly, Raisor cannot be liable under § 1983 unless he violated one of Pyles' federal constitutional rights. Pyles' rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim.

■ The federal constitutional right potentially implicated here is the Fourth Amendment right to be arrested only on probable cause. Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge "were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 3 Ohio Misc. 71, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir.1989). The district court concluded that Raisor had probable cause to believe that Pyles gave Haars a glass of beer, and our de novo review of the record compels us to reach the same conclusion. Raisor observed a person who appeared to be well under the age of majority in the company of three adults who were carrying six glasses of beer. When he requested identification from the minor, she was unable to provide any, and instead attempted to move the glass of beer away from her seat and closer to an adult. It is immaterial that Raisor did not personally observe Pyles hand the glass of beer to Haars. The facts and circumstances of this case provided Raisor with probable cause to believe that Pyles had procured beer for Haars.

■ We also are not persuaded that other aspects of Pyles' arrest support a § 1983 action. The district court faulted the officers' decision to arrest only those offenders who supplied alcohol to minors under the age of 18, while issuing citations to those offend-

---

whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). We find it unnecessary to reach the

question of immunity because of Pyles' failure to demonstrate that Raisor violated any federal constitutional right.

ers who supplied alcohol to minors 18 years and older. This decision doubtless was based on an assessment of the relative severity of the offenses and the risks posed to the minors involved. We are unaware of any federal constitutional impediment to the officers' ability to make rational distinctions such as this.

■ Finally, it is not clear how much importance the district court attached to the possibility that Pyles was Haars' legal guardian, and, if so, not subject to § 530.070(1)(a). While stating in its ruling on the parties' motions that Raisor had a duty to inquire about Pyles' status, the court instructed the jury to disregard this aspect of the case in assessing damages. We reject the suggestion that a law enforcement officer is prohibited from making a warrantless arrest supported by probable cause based solely on the offender's word that he or she enjoys a status which renders him or her exempt from prosecution. Pyles did not inform Raisor that she was Haars' guardian, and made no attempt to document her status. Pyles' mere mention of the fact that Haars was a foreign exchange student living in her household did not negate the existence of probable cause.

In sum, Raisor's alleged violation of Kentucky law is not actionable under § 1983. As was stated in *Archie v. Racine,* 847 F.2d 1211, 1217 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989), "[a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules."

**REVERSED.** Judgment should be entered for defendant.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I disagree with the majority's assertion that, based on the facts in the record before

this court, the existence of Officer Raisor's probable cause to arrest Teresa Pyles is a question where "there is only one reasonable determination possible." Majority Op. at 1215 (citing *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir.1989)). Indeed, the facts presented to this court raise serious questions as to the existence of probable cause.

No one disputes that at the time the unlawful transaction allegedly took place, the auditorium in Rupp Arena was unlit because a rock concert was about to begin. The lower court determined that neither Officer Raisor nor any of the other officers present actually witnessed Pyles give the beer to Annabell Haars; nor did any of the officers actually see Haars drink the beer. *See* J.A. at 69. In fact, based on the record before this court, the only evidence that arguably could have provided a basis for probable cause was Officer Raisor's testimony that during his questioning of Pyles' party, he witnessed Haars "slide" a cup of beer toward Pyles with her (Haars') foot.

Contrary to the majority's claim, the district court did not find that Raisor had probable cause to conclude that Pyles has supplied Haars with beer. *See* J.A. at 68–72. This case is before this court on appeal from the district court's grant of Pyles' motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50(a). *See* J.A. at 37. Accordingly, the district court was bound to view all the evidence, and reasonable inferences drawn therefrom, in the light most favorable to Officer Raisor. *See Agristor Leasing v. A.O. Smith Harvestore Prods. Inc,* 869 F.2d 264, 268 (6th Cir.1989). Evaluating the evidence under this standard, the lower court correctly concluded that "Officer Raisor *arguably* had probable cause to believe that someone in [Pyles'] party—not necessarily even [Pyles] herself—had committed an offense." J.A. at 69 (emphasis added).[1] A jury would not, however, have been bound by this standard, but would have applied the

---

1. Addressing Officer Raisor's claim that he was entitled to qualified immunity because he had probable cause to believe that a misdemeanor had been committed in his presence, the lower court stated the following:

This argument is without merit. In Kentucky, a warrantless arrest on misdemeanor

charges is lawful only if the offense is committed in the arresting officer's presence. The evidence in this case is clear that neither Officer Raisor nor his fellow officers witnessed many crucial elements of the offense charged. Although Officer Raisor arguably had probable cause to believe that someone in Plaintiff's

"preponderance of the evidence" standard, generally applicable in civil cases. Under this less rigid standard, a reasonable juror certainly could have determined that Officer Raisor lacked probable cause to arrest Pyles for the suspected state-law misdemeanor crime of procuring alcohol for a minor, and could accordingly have found that Raisor violated Pyles' right not to be arrested for a misdemeanor absent probable cause by the arresting officer. *See Adams v. Metiva*, 31 F.3d 375, 383 (6th Cir.1994) ("An arrest must be predicated on probable cause that a crime has been committed.") (citing *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)).

Accordingly, while I agree that an alleged violation of Kentucky law is an inappropriate basis for directing a verdict in favor of Pyles in this section 1983 action, I strongly believe that this conclusion should not bring this litigation to an end as the majority has done. Rather, I would vacate the directed verdict in favor of Pyles and remand this case in order to allow a jury to determine whether Officer Raisor's actions violated Pyles' right, under federal law or the Constitution, not to be arrested without probable cause. I therefore **dissent.**

party—not necessarily even Plaintiff herself—had committed an offense, mere probable cause that a misdemeanor offense has occurred is insufficient grounds for arrest.

J.A. at 69. Thus, although the district court may have erred in applying the standard for establishing a claim under 18 U.S.C. § 1983, the majority has clearly misstated the court's factual findings with respect to probable cause.